REDMANN, Judge.
Rightly or wrongly expecting an under-$45,000 price for his house being built by plaintiff under an oral contract for “cost of [labor and] materials plus 15%,” defendant received a bill for about $63,000 when the house was about 98% complete. The resulting disagreement occasioned the house’s remaining vacant while 10% yearly interest on the construction loan continued to accrue. Defendant now appeals from a judgment for $70,178.66 (actually $1,000 more than the total of its components: $63,891.86 on contract, $813 for insurance and $4,473.80 interest) plus legal interest plus $12.72 a day[1] conventional interest.
The principal issue on appeal is who should bear the interest. Two more years have passed, adding over $9,000 to the conventional interest, since the trial court judgment (some time having been lost through the dismissal and reinstatement of this appeal; see 364 So.2d 577).
A second issue is what is the cost for which plaintiff is entitled to reimbursement plus 15%. We note some apparent duplications of items in the supporting documents (e. g., insurance $294; Burmaster $191.58; at times it appears that both contractor and *768 a subcontractor are paying the same worker). More important, we note that plaintiff hired subcontracting firms operated by plaintiff’s officers to do plumbing and electrical and certain other work. Those subcontracting firms charge a certain amount for labor but do not support the charge by payroll checks (although in some cases they state labor charges in 1976 of $12 an hour). One subcontractor charged 15% for overhead and then 15% for profit, a total charge of 32.25% upon alleged costs, and uppn that total of 132.25% of costs plaintiff then superimposed yet another 15%, making a total charge of 52.08% upon the cost. Thus for every $100 of labor and materials for that particular work, defendant is being charged $152.08 although “labor and material plus 15% would amount to only $115.
Accepting that in general contractors on simple “cost plus” may employ some subcontractors for part of the work and treat the subcontractors’ charges as costs, especially as to certain specialized work such as airconditioning, we reason that a contract for “cost of labor and materials plus 15%” does not allow the contractor to charge the owner 115% of the price for which he hires a corporation fully owned by himself to perform the contract, because that is not the bargain with the owner. The owner’s bargain was an extra 15% of cost to the contractor and the contractor cannot collect more than 15% by using a controlled corporation to charge himself overhead and profit in addition to labor and materials. In the matter before us, the corporate contractor’s officers were the owners of some of the subcontractor firms and we conclude that the owner is not liable for those particular subcontract prices plus 15%; rather, he is liable only for the cost of labor and materials plus 15% — a figure we are unable to determine in some cases because the subcontractor’s statement does not make it clear.
The bargain was unusual both in that it was for cost of labor and materials plus only 15% (although defendant was to pay construction loan interest) and in that it was oral. This unusualness is attributable to the circumstance that one of plaintiff’s principal shareholders was defendant’s employer (in another business).
The amount due under the parties’ bargain was not properly proved by plaintiff because of plaintiff’s use of subcontractor’s charges from plaintiff’s officers’ corporations and because of some apparent duplication in charges. Remand is necessary to show the cost of labor and material plus 15% on the work subcontracted to firms owned by plaintiff’s officers. Because remand is necessary we do not seek out and eliminate duplications; the parties may do so if they desire.
The more lamentable aspect of this case is that no one has enjoyed the use of the house although someone must pay interest for the use of the money borrowed to build the house. The substantial loss which has occurred by the house’s not being used is the fault of both the contractor and the owner. Ordinarily, once construction is completed, the use of the house is an equivalent for the interest on the loan the owner makes to pay for the house (or his equivalent. loss of interest or investment income if he pays with his own money). Thus, if the owner had been or should have been occupying the house it would be fair to charge him legal interest on the contract price, La.C.C.1935, or possibly contractual interest on the construction loan even after construction was completed. On the other hand, if the builder made use of the house unavailable, as by noncompletion or other conduct, the builder should bear all of the post-construction interest. Our view of the facts is that both plaintiff, by non-completion and non-delivery, and defendant, by failure to assert his paramount right to occupy his own land, contributed to the loss of the use of the house. We therefore apportion the interest paid against them equally, for the period from presentment of the $63,000 bill until the date of this opinion. The previous interest is defendant’s cost by agreement.[2] Interest on the loan *769 after the date of this opinion is to be borne by defendant (who will henceforth enjoy unhampered use of his house[3]) until the trial court fixes the amount due as the price — which will thereafter bear legal interest, C.C.1935, from date of judgment until paid.
Set aside; remanded.

. Curiously, this “daily interest rate paid by plaintiff on the [$45,640.24] note” is 8.5% rather than 10% per annum.

. Defendant argues he should pay only 8.5% because he lost an 8.5% mortgage loan through plaintiffs prematurity in laying the slab (subordinating later mortgages to all building privileg *769 es, La.R.S. 9:4812). The circumstances are far from clear, and we conclude that defendant— the beneficiary of a very favorable construction contract — probably accepted, at least impliedly, the 10% rate on the bank loan to the contractor rather than work out the legal method (if the mortgagee would agree) to allow the 8.5% mortgage to be recorded with preference over subsequent construction notwithstanding the premature slab-laying.

. Any problem in obtaining mortgage financing because of a building contract lien will not be solvable until judgment fixes the amount of the lien. Meanwhile, defendant must be allowed use of the house or he will owe no interest on loan or price.